May it please the court, your honors, my name is Lita Sanchez and I represent the petitioner. Also present with me at council table is Carol Edward. I will seek to reserve five minutes of my time for rebuttal and I'll keep track of that. Mr. Guitierrez-Sanchez was brought to the United States when he was four years old and has resided continuously in this country since that time. He is the son of lawful permanent residents and the father to a small U.S. citizen child. He is expecting, with his U.S. citizen partner, their second child in four days. Quick question, quick question for you. You're obviously aware of all of the memoranda and the announcements by the administration. Have you approached the government to see whether this case should be involved in some discussions? No, your honor, we have not for two reasons. One is that we feel strongly that the petitioner in this case is entitled to the opportunity to present fully his application for adjustment of status, which would result in his lawful permanent residency and a memorandum. So bottom line is, whatever the government wanted to do, you need to clear this up or your client loses some material benefit, is that right? Yes, your honor. Okay, thank you. The BIA has denied petitioner's application for adjustment of status based upon the allegation that the petitioner is inadmissible pursuant to INA 212A2C as someone who they have reason to believe has been engaged in drug trafficking. The central issue before the court today in this case is whether this finding is supported by substantial probative and reasonable evidence. The BIA relied primarily upon four evidentiary sources to substantiate a conclusion of inadmissibility in this case. The fact that the petitioner rendered a confession after a raid on his family residence. The fact that petitioner's family rented one of four homes which adjoined a large vineyard containing a grow operation, a marijuana grow operation. And the fact that petitioner ultimately accepted a disposition in juvenile court for possession of more than 40 grams of marijuana. And finally, the fact that physical evidence was located in a bedroom jointly shared by petitioner with two adult males. It is undisputed in this case that at the time of petitioner's confession to law enforcement, he had just turned 15 years old. It is also undisputed that his confession was given after approximately 15 armed law enforcement officers raided his family home, arrested his family, separated him from his family members, and interrogated him. It's undisputed that the confession that petitioner rendered was both factually inaccurate, claiming to contain an inaccurate number of plants in the grow operation, and also it is undisputed that the alleged confession given by petitioner that he was the mastermind behind this grow operation was not plausible and was not believable. The immigration judge, the BIA, and the detective on the case did not believe these statements could be or were true. It is further undisputed that the physical evidence located in the bedroom was in a bedroom jointly shared by petitioner with two adult males, and that none of petitioner's fingerprints were located on these items. It is further undisputed that the surveillance maintained by law enforcement of the grow operation did not have any sightings of petitioner on the tapes. When did this happen? In 2006, Your Honor. So he is now about 20? Yes, Your Honor. I would have to double-check that he is about 20. He turned 15 shortly before the arrest. In August, he turned 15. So he is around 20. And where is his family? In eastern Washington, Yakima. Nothing ever happened to any of them? No, Your Honor. While the record is unclear as it relates to the uncle of the petitioner who was residing. Yes, he did, Your Honor. So it is inconclusive. But it is unknown in the record whether, and actually that is another important point, that it is unknown whether any charges or other allegations pertaining to this grow operation were lodged against other parties. That is something that the testifying officer did not know, and that the record does not show whether there were other leads followed in this case. The collective evidence in this case, Your Honor... He was a judge, a juvenile delinquent. I'm sorry, Your Honor? He was a judge, a juvenile delinquent. He accepted a civil disposition, yes, Your Honor, in juvenile court, and nothing more. And that disposition was for possession of more than 40 grams of marijuana. There was no disposition, inasmuch as that can be considered in this case, Your Honor, there was no disposition relating to any trafficking charges. It is further an important point to note that one of the pieces of evidence located in the bedroom was a marijuana smoking device. The immigration judge found to be true that the petitioner did not use marijuana for personal use, which is consistent with the rest of the record. We have a young individual who was doing well in school and was, you know, there are multiple letters supporting his good character and conduct in the community, and yet there's no explanation in the record as to who may have possessed this smoking device and other explanations for who may have owned these physical pieces of evidence, which none of the petitioner's fingerprints were located on to begin with. It is clear, Your Honor, that the collective evidence in this case does not meet the standard of sufficient, substantial, probative, and reasonable evidence, excuse me, and that the appropriate remedy is a remand back to the immigration judge so that the petitioner can have the opportunity to present his application for adjustment of status. There are additional legal errors in this case, and as much as the BIA mischaracterized the IJ's credibility findings, stating that all of the petitioner's testimony was not credible, the BIA did not make an express adverse credibility finding.  Yes, Your Honor. On AR-71, the IJ stated he believed that Gutierrez-Sanchez's testimony that he'd never smoked marijuana, that he believed that, rather, but he found that this fact, coupled with the drug paraphernalia in his room, made it a stronger case that your client was packaging drug for sale, not personal use. Yes, Your Honor. What's deficient about that finding? Well, what is deficient about that finding, Your Honor, is that there is no probative clear evidence linking petitioner to the items of physical evidence referenced by the immigration judge. Other than what he said were his initially. I admit he said that he said this because he wanted to protect his family, but he did say that those were his. Yes, Your Honor. That's evidence. He did say it, Your Honor, yet he provided a plausible explanation at the hearing as to why he rendered that statement. I understand that. I'm just saying you say it's undisputed that you've said that repeatedly, and I'm just pointing out that there are some points here that are, in fact, disputed, and I'm just trying to get your understanding or your explanation as to why what you say is undisputed is perhaps not always undisputed and see what role that plays, if any, on our evaluation of the case. Yes, Your Honor, it is not disputed. that the petitioner at one point stated those items belonged to him. And in addition to that, he said that he harvested and destroyed a portion of the live marijuana plants prior to the arrival of the police and that the seeds, dried marijuana, and the scallop were found in his room and belonged to him, right? Yes, he did in his pre-hearing statements. And there are some other things in here as well. But the bottom line is what we're wrestling with here is whether these and some other points that were dealt with by the IJ and specifically addressed by the IJ, whether that meets the standard necessary to establish his credibility and the IJ's ruling. So it isn't that there is no evidence, it's just that there is contested evidence, and you're asking us to weigh whether it meets the standard. Is that a fair statement? Yes, Your Honor. I would like to add that the evidence in the case, yes, Your Honor, the evidence in the case linking Petitioner directly to ownership over these items, however, is simply his confessions. And when I said it was undisputed, what is undisputed about those confessions is not the fact that Petitioner rendered a confession stating those things, but it is undisputed that the bulk of what he stated, despite the circumstances indicating coercion and duress, the bulk of what he stated was not believable. And the testifying officer said we don't believe that he could have said that. It wasn't believable by whose standard? Well, it was not believed by the testifying detective on the case. He said that he could not have been the mastermind and that he stated that an incorrect number of plants were contained in the grow operation. I understand the business about the number of plants, but what I see here is that the detective indicated that Gutierrez-Sanchez confessed quickly and openly and was cocky and arrogant during the interrogation, not scared and timid. That's AR-165. Yes, Your Honor. What do we make of that? Well, there is a dispute over the details as it pertains to the demeanor and some of the details arising out of the confession, namely that the detective alleges that he was cocky, that he didn't take any mind to the potential immigration consequences his statements may have. Our petitioner did testify, and the judge failed to address this portion of his testimony, that he merely was threatened with the prolonged detention and potential deportation of his parents and that he was also not warned about the potential immigration consequences of his confession. There is a dispute there, Your Honor. Yes. And the fact of the matter is that the immigration judge did not address those portions of the testimony as credible or not credible, and it is our position that the BIA made an error in just simply characterizing all of the petitioner's testimony as not being credible. That was not what the IJ did. The IJ didn't address certain portions, and the portions he didn't address should be given a rebuttable presumption of credibility on appeal, Your Honor. On what basis? On the basis of the fact that the holdings of the court in Abu Fayyad v. Holder and Gomez-Granillo v. Holder. So you're saying that if an alien says something that is not addressed by the IJ, then there's a rebuttable presumption that that is credible? Is that what you're saying? I'm saying that in the context of an application determining eligibility and relief for removal, which is a situation where there is an asylum aspect to this as well, is there not? No, there's not, Your Honor. We're dealing with relief from an adjustment of status. I apologize. That's an earlier case I was looking at. Yes, Your Honor. But I want to be sure I understand what you're saying. You are saying that in this context, that if the IJ does not address every single allegation made by the alien, that the portions not addressed for purposes of how they're evaluated on appeal, they are presumptively valid? They should be given a presumption of credibility, Your Honor. And the government actually acknowledges this in briefing, and there is a specific regulation, which I can find for you, that does reference that in the context of an application made for relief, in the context of establishing eligibility for relief from removal, that the immigration judge's credibility findings must be expressed. I get that. And where the IJ does not make an explicit express adverse credibility finding, there should be a rebuttable presumption of credibility of those statements on appeal, Your Honor. But they also, I'm sorry, go ahead. No, I just, Judge Smith is ahead of me, because what is it that he testified to in the hearing that you want us to credit? Well, Your Honor, specifically that argument arises in the context of what Judge Smith was referencing, which is the statements of Petitioner explaining that his supposed version, one could say, of the interrogation, the fact that he was making these statements after being threatened with the deportation of his parents, the prolonged detention of his family, and the fact that he was not warned of the potential immigration consequences. And we have the detective, on the other hand, saying he was cocky and arrogant and paid no mind to these matters. Well, let's suppose that that's all true. Yes, Your Honor. I'm not quite following where that gets us. Well, Your Honor, even suppose that that's true. We're left with the same issues, which is the fact that the facts and the evidence in this record do not support a reason to believe that he was a drug trafficker. There's no probative, substantial evidence. Reason to believe he knowingly engaged in drug trafficking. Yes, Your Honor. And that supports it further, but even in absence of the evidence. But I'm still missing something here. Okay. Let's suppose that he was not warned when he was interrogated, but he was there and he made the statements that he was in charge and he was on the scene and there were all of these plants there. Even though you might not think that he was the mastermind, he doesn't have to be the mastermind. How does that undermine a reason to believe that he was engaged in it and that he knew that there was drug trafficking and he was doing a part of it as if it's maybe a family operation? It looks like it was. Yes. It further supports, undermines the probative value of his statement, is what it does, Your Honor. Which statement? The pre-hearing confession that he rendered is undermined by those circumstances of duress. However, it doesn't alter the end conclusion. Even assuming that we give credit to the government's version of the or the detective's version of that instance, it doesn't alter the conclusion that the other facts in the record do not substantiate there's a reason to believe that he was engaged in drug trafficking. How do we come to the conclusion, even if we accept what he said on the scene as not being particularly credible, that he was the mastermind? How do we get to the point of saying that the evidence compels a finding that he didn't know anything about it? Your Honor, I think you look simply to the facts that we have in the record, the disposition for possession of 40 grams of marijuana in juvenile court, the absence of any fingerprints, surveillance footage, directly linking petitioner to the drug trafficking,  when there's been an individual driving 200 pounds or 86 pounds of marijuana across the border, sometimes thousands of pounds. This is not the case here. And finally, the fact that the location of the family home was one of four residences adjoining a vineyard. This is, at best, tangential evidence. It's speculation, and it's not substantially proven. I want to address your point before on Abu Fayyad. I remember now why I'm thinking of asylum, because Abu Fayyad says that the deemed true convention has not been extended outside the asylum context. And they specifically said we declined to extend its application to contexts where such an adjustment to normal evidentiary burdens is not warranted. So for purposes of our evaluation, there's nothing in Abu Fayyad that would suggest that things that were not controverted directly by the IJ are deemed admitted. Do you agree with that? No, Your Honor, because Abu Fayyad was dealing with a context, and the court specifically noted in that case that... This is not an asylum case, right? No, this is not an asylum case, Your Honor. And first I would like to note that that presumption has been applied in the case. I'm going to have to wind this up quickly. We're over time already. Okay, Your Honor. May I finish that answer to my question as quick as I can, and then I will have a seat? Basically, the court in Abu Fayyad did note specifically, as did the court recently in Gomez-Granillo v. Holder, which is a case dealing with a reason to believe as well. And it said that although Abu Fayyad established that there is a lack of this general requirement, as Your Honor has stated, it left open the possible application of the rule in other categories of cases. And it specifically said in Gomez-Granillo, for example, that we will not apply that standard in the case before us because it does not arise in the context of establishing eligibility from relief from removal. Your Honor, the case that we are discussing today does arise in the context of establishing relief from removal, and it has been applied in other contexts outside the asylum context, such as in a cancellation of removal application before. Thank you, Counsel. Thank you, Your Honors. Good morning. Good morning, Counsel. May it please the Court. Lindsay Murphy on behalf of the Attorney General. Your Honors, substantial and probative reasonable evidence supports the conclusion here that there's reason to believe that the Petitioner was involved in illicit trafficking of a controlled substance. The evidence relied upon by the agency includes the Petitioner's own confession to police, the circumstances surrounding that confession. The one that said he was the criminal mastermind of this multimillion-dollar project. Yes, Your Honor. At 14. At 15, Your Honor, yes. Well, he had turned 15 before, but the project didn't take place in one day. No. No. Well, in addition to his confession, the circumstances surrounding his confession, the fact that there was marijuana seeds, prepackaged bags of marijuana, a scale in the Petitioner's room, he confessed to the police that those items belonged to him. In addition, the Petitioner's own brother implicated him and told the police that those items belonged to the Petitioner. He also said he didn't use marijuana, right? He said that, yes, Your Honor. So that would tend to confirm the fact that this was part of a sale operation. Correct, Your Honor. And his brother, who was an adult and lived in that room, said it's his kid brother who's doing it all. Correct. In addition, we have the Petitioner's guilty plea to possession of over more than 40 grams of marijuana in juvenile court, and finally the testimony of the arresting officer who, based on the evidence in the record, assessed that the Petitioner, while maybe he may not have been the mastermind of the operation, he certainly was involved. We clearly have a dispute, Able Counsel, for the Petitioner here, and you don't agree. The IJ and then later the BIA in evaluating the IJ made certain findings. What does the IJ, what's the standard that the IJ has to meet in order to uphold the ruling? He has to find that there's a reason to believe, well, to begin with, because the Petitioner was applying for relief, it was his burden to show by a preponderance of the evidence that he was not inadmissible. And the immigration judge determined that this ground of inadmissibility, 1182 AC, there was a reason to believe that the Petitioner was involved in drug trafficking. This is a very low standard. This standard has generally been equated to the probable cause standard. The Eleventh Circuit has held that you need more than a suspicion, but really it's not very much more. And here there is substantial evidence supporting the immigration judges and the Board's determination that there was reason to believe. So for our purposes, all we're really asked to do here is to determine whether the IJ, later the BIA in reviewing that work, met that low standard. Is that correct? That's correct. Even if Mr. Gutierrez-Sanchez and his counsel strongly disagree with how it should be evaluated? That's correct. And do you, opposing counsel has indicated that based upon Abu Fayyad and its successors, that the material statements made by Mr. Gutierrez-Sanchez at the IJ hearing that were not specifically addressed by the IJ are presumed accurate. Is the government's position that that burden, if you will, has not been applied to this kind of a case and that that is not accurate in this case? I disagree that that burden is applicable to this case, and I also disagree that the agency applied an improper burden. While the Abu Fayyad case does recognize that in asylum cases, a petitioner should be deemed to be true, that the testimony of a petitioner should be deemed to be true, the court limited that context to asylum cases because of the peculiar nature of the difficulty of proving those kinds of allegations, isn't it? Exactly, because a petitioner in asylum cases can't be expected to try to have their persecutor testify. Exactly, thank you. However, because this is, even assuming that the immigration judge was required to make a credibility determination here, certainly there's nothing in the INA that requires the immigration judge to address each and every single statement of the petitioner and find whether each and every single statement was true or untrue. Here, the immigration judge clearly addressed the only issue that mattered in this case, which was the petitioner's claims of innocence. He found that those were not credible. He found that they were contradicted by the testimony of the arresting officer. And even if the petitioner were deemed credible, the immigration judge and the agency were still entitled, when faced with two competing views of the evidence that are both supported by the record, the immigration judge is entitled to choose one over the other. And this court has stated that it rarely overturns such determinations. And if the court has no further questions. I just want to understand this case, if I can. This was a boy who was brought to the United States when he was five years old. It wasn't his fault he was brought here. He's lived here ever since. He's gone to high school. The only thing that's wrong in his life is that when he was 14, living with older adults, there was marijuana in his room, and he told the police, I'm the criminal mastermind of this big growing operation. Other than that, he's lived a perfect life, and the government wants to send him back to a country he has no recollection of, no contact with, and that's the way the government thinks it's proper to behave, right? Well, Your Honor, in addition to confessing to the police on the scene, he also had a couple of months during which time he conferred with an attorney, and he decided to plead guilty in juvenile court to possession of over 40 grams of marijuana. To being a juvenile delinquent. Yes. To save his family. And because of that one juvenile delinquency, you want to take him away from the family, away from the country he's been raised in, and send him back, and government has nothing better to do than that. Well, as Judge Smith noted at the beginning of argument here, the petitioner still does have an opportunity to seek prosecutorial discretion with ICE. He has not done so yet. I don't know if he meets all of the requirements, including whether he's graduated from high school. That's not clear from the record. Okay. So maybe this is a matter that can be pursued further between the government and the petitioner, and we can find that the government will be a little more graceful and try to follow the kind of policy that the President has announced. That's what ICE is trying to do. Good. Well, maybe we can help with that. Thank you. Thank you. Case just argued will be submitted. Next case on the calendar is Stevens v. U.S. Railroad Retirement Board.
judges: Schroeder, Reinhardt, M Smith, Cjj